This morning is Huon v. Denton. Mr. Huon. I may please the court. My name is Minneth Huon. I represent the plaintiff appellant. Calling someone an acquitted rapist is defamatory per se. Would you mind keeping your voice up and coming in a little closer? I'm sorry. That's okay. Calling someone an acquitted rapist is defamatory per se. Even the district court acknowledges that on page 20 that it's defamatory per se to falsely suggest that a person is a rapist. There is no innocent construction to the phrase acquitted rapist. It has multiple defamatory meanings. A rapist who got away with rape, a one-time rapist who complained of being called a serial rapist. The headlines, acquitted rapist sued blocks for calling him a serial rapist, is clearly defamatory. The district court erred by focusing on the isolated word acquitted in two references. One in the headline, one in the body of the article. But the Illinois Supreme Court in two it said that you cannot focus on isolated word. In Hadley, the Illinois Supreme Court recently said that implying that someone is a sex offender is defamatory per se. And the U.S. Supreme Court a long time ago said in Bernoullis that no one will deny that it's libelous, falsely to charge another with being a rapist. And the Illinois Supreme Court in Catalano citing to Ciance, in Ciance the mayor had been accused of rape and that's not constantly protected opinion. The case that the defendant rely on, Harrison versus Chicago Times, is not actable. In addition to being an appellate court opinion, what happened in Harrison was that the headline was kidnapped girl must go home. The headline was about the victim, the little girl. It was not calling the mother a kidnapper. On top of that, the headline was correct because the mother had removed the child from Italy to Chicago. And there was a court order to return the child to Italy pursuant to the hate convention. That's not analogous here where the headline is about Juan and it calls him acquitted rapist. Two blogs were calling him a serial rapist. Let me ask you, are there any Illinois cases that say that the allegedly defamatory headline, when the headline is analyzed without regard to the underlying article? Because the underlying article made it clear what the situation was. Do you have a case where it's just the headline is sufficient when one doesn't look at what was said during the rest of the article? I cited those cases, some of those older cases where when there's more than one meaning, it's for a jury to decide that. I think perhaps in maybe one of those cases there was a discussion. But in this case, the body of the article intensifies the defamatory meaning of the headlines, and I'll explain why. In the body of the article, they intensified the meaning of the defamatory headline and added credibility by inventing the fact that Gawker knew why Juan got away with rape. In fact, if you look at district court's opinion on page 28, the district court's own word says, rather than painting a picture of overzealous journalists who pried into Juan's private affairs, the complaint depicts shoddy journalists who made up information and could not be bothered to do more than copy and paste or summarize information from other articles. The reason why inventing the fact that they knew why Juan got away with rape is important is because they invented the fact that the complainant had been unfairly attacked because she had been drinking based on the bartender's testimony. There is nothing in the record of appeal that shows the bartender's testimony. The Gawker defendants cite to the testimony of the state's attorneys saying that the alleged complainant was not credible. And it's clear from the excerpts of the record that was applied that the complainant was not credible, and that's why the jury reached that decision. And Gawker also invented the fact that Juan had presented the consent defense. There was no evidence of the consent defense. Opening arguments is not evidence. The other way that the article invented that— Mr. Fillon, time is short, and I would like to spend some of it on the difficulties presented by the comments that were posted at the bottom of the article. Did you seek any discovery to see what could be shown about these comments? That's part of the problem, is this case was decided on— The answer to that question is yes or no. No, discovery was not— Now you can explain why. But I needed to know where we are. I sought discovery, and I couldn't get a 26FA conference done. Discovery was deferred, and the case languished during that time. So discovery waits for the 26F conference, and you weren't able to get a 26F conference scheduled? Yes, and at some point I filed a motion to compel a 26F conference or to get discovery at some point, and that was tabled. Okay, so that's where we were. You couldn't get the 26F conference, so you couldn't get discovery. Okay. We were waiting for the judge to rule on the motion to dismiss. What happened was there were two rounds or briefing rounds, and the case was reassigned to another district judge at some point, and the judge dismissed the case based on subject matter jurisdiction. Gawker had not answered local rule or Rule 7.1, and if they had, we would have had the information on subject matter jurisdiction, but they didn't. So without the benefit of discovery, I had to replead the complaint to get subject matter jurisdiction. Once I replied to the complaint, the case went to another round of briefing, which was similar to the first motion to dismiss, and then in December 2014, the court ruled for the first time on the issue of defamation per quad. Gawker did not present a cogent argument on the innocent rule construction. The court, sua sponte, raised the argument for Gawker, and after the court dismissed the complaint, I filed a motion for leave. In the opinion in footnote 6, the court makes the mention that this complaint may survive a count for defamation per quad if one had pled special damages adequately. So I filed a motion for leave to file a complaint with just the special damages allegations. There was briefing on causation, and to get to your point about the CDA, Gawker is a content provider. It's responsible in whole or part for developing the comments. It caused the statements. It contributed materially, and I'll tell you why. It specifically invites comment by the case owner. Under the Communications Decency Act, that gets you nowhere unless Gawker is the real author of these comments, and that's what we may need some discovery to figure out. And I pled that Gawker employees may be posting these comments under aliases, and I believe that I've met the pleading requirement to get to that discovery. When I plead that, I see that my rebuttal time is on, and I'll reserve time for rebuttal. Thank you. Certainly, Mr. Huon. Mr. Bowman. Good morning. May it please the court. Chad Bowman on behalf of the appellees in this case. This is a case about an 11-sentence news item by Gawker entirely about public proceedings, judicial proceedings, three proceedings, initial complaint in this case, an underlying prosecution, and acquittal of Mr. Huon. Yeah, well, the initial problem I was talking about with Mr. Huon has to do with the comments. The complaint alleges that Gawker's own employees are responsible for those comments, may indeed have written them. And if that's so, Section 230 doesn't do any good for the defense. I read the district court's opinion as saying, well, I just don't believe that allegation. The question I have is whether it is possible to do that in advance of discovery. I think it is, Your Honor. There are a number of cases since Iqbal and Twombly have been decided that have considered similar allegations. We cite them in the brief. I understand that if the complaint said these comments were written by Martians and transmitted by the Venusians, who run a shuttle between here and Mars, that's fine. The Supreme Court has said that obviously insane allegations don't require discovery. I don't see what's insane about the allegation that comments on an article were actually created by the author of the article. We have published examples of that kind of thing happening. We do, Your Honor. The question isn't whether it's possible that the plaintiff could have pled facts supporting that. No, no, no, no, no, no, no. You don't have to plead facts. You plead claims. Right? You use discovery to get facts. This complaint pleads a claim, and then you use discovery to get facts. Has the Supreme Court ever said, other than the example of insane fantasies, that a district judge can say, I just don't believe that allegation. Case dismissed. Your Honor, I believe the Supreme Court has said that the claims must be plausible on their face. It's perfectly plausible that people will have signed comments with an alias. Right? It happens all the time. And Gawker's own employees have been outed as doing this kind of thing. I don't believe that anything in the record shows that, Your Honor. Mr. Juan cited some articles about, from 2012, in which Gawker was going to have a commenting system to highlight certain threads of commenters. Well, the best thing to do normally is to test the allegations in discovery, see what happens. You have my question again. Has the Supreme Court ever said, ever, that a district judge may say, I just don't believe that allegation. Suppose the allegation is the defendant engaged in age discrimination. That's all, just flat. And there's no evidence yet, because that's for discovery. I take it as given that a district judge couldn't say, I just don't believe that this defendant ever does that. Case dismissed. Can't do that. So why can the judge do this? Our position would be, Your Honor, that the comments appear to be what they appear to be, statements signed by something other than Gawker. And, in fact, throughout the complaint, Mr. Juan repeatedly refers to them as reader comments. And there's one paragraph of the complaint, paragraph 110, that he says they may be comments actually posted under pseudonyms by Gawker. And our position is that doesn't plausibly establish that those comments or plead that those comments are anything other than they appear to be. But that had happened before with Gawker, right, that employees had used pseudonyms? That's not in the record, Your Honor. The things that were put in the record were misrepresented. We would urge the court to actually look at the underlying materials. Fine. Look, people are saying this about Gawker. You think the published story is saying this. We're all wrong. But I don't get how we resolve litigation without facts. If they're all wrong, then they're all wrong, and the defense will prevail. But we have the idea that a district judge can say, I just don't believe this allegation. Boy, that makes a hash of the summary judgment procedure and discovery and the right of jury trial. They're all up in smoke. And I don't think that was the point of Twombly. I understand, Your Honor. Again, I take it from your answer to my question that the Supreme Court has never in the history of this country allowed that. I would not take the position the Supreme Court has said that a district judge can disregard factual pleadings. You have found no case in which a district judge has been allowed to dismiss a complaint after saying, I just don't believe the allegation, period. Supreme Court, Your Honor, no. Well, this circuit, other than the kind of allegation that suggests that there's a madman at work. And this is not that kind of allegation. No, but it's also an allegation that we would argue doesn't push the claim across the line from plausible. But let me explain one other thing that may be helpful, Your Honor. We actually make two arguments about the comments. The first argument is the one that we've been discussing here, that the allegations don't plausibly establish that they aren't what they appear to be. But the alternate argument for affirmance, and the court, of course, can affirm on any basis, is that even if one were to accept the qualified potential allegation that certain of those unidentified comments are produced by unidentified Gawker employees, it doesn't say which ones. None of them are actionable under common law because all of them refer to the privileged facts in the story, refer to the underlying proceedings, and make opinions about them. He sounds like a for real crazy person. That's not actionable as a statement of fact. And so even if one were to accept the proposition that the single paragraph 110, in contrary to everything else in the complaint, satisfactorily establishes that Gawker, some number of Gawker employees authored certain of those comments, those comments aren't actionable in any sense, and the dismissal can be affirmed on that basis, Your Honor. And I just had a couple of comments about the innocent construction rule. Mr. Wan referenced the judge's reference to shoddy journalists. He was talking about the initial story that was the subject of the initial complaint by the other defendant in the case above the law. That's what this story by Gawker said, that it was shoddy journalism. It was a commentary on the complaint filed against the first defendant. The innocent construction rule qualifier, acquittal, is an important qualifier. We haven't found a case in Illinois specifically on acquitted, but we have found, you know, there are cases reputed modster. Two Illinois appellate cases saying the word reputed, which is a much weaker qualifier than acquitted, was sufficient to raise an alternate construction that the reputation may not be earned, and that there is a non-defamatory reasonable construction of reputed mobster. That's the Salamone case and the Antonelli case. Here, acquitted is a much stronger qualifier, even taking alone the headline. And then, of course, you don't take the headline alone. You take the headline in the context of the entire report, which makes amply clear that Mr. Wan was, in fact, acquitted. The jury believed his defense. He was not convicted of any charges. And finally, on the discovery point, Mr. Wan did seek discovery, but it was jurisdictional discovery, discovery about the identity of the corporate defendants. The second amended complaint in this case was against the Gawker defendants on appeal, and the Gawker filed a motion to dismiss, raising the 230 issue. At that point, on the second amended complaint, there was a third amended complaint. There was a fourth amended complaint. After the district court ruled, Mr. Wan sought permission to file a fifth amended complaint, and a proposed fifth amended complaint. And that complaint made no additional allegations about the user comments. So he's had numerous bites at the apple. Thank you, Your Honor. Thank you very much. Mr. Bowman, anything further? Mr. Huon? To answer the court's question earlier, Bryson said that the focus of the industry construction rule is whether the statement, when so concerned, may reasonably be instantly interpreted. There's no instant interpretation for acquitted rapist. Man acquitted of rape is not the same thing as referring to the subject as the acquitted rapist. It's like calling someone an honest liar. It's not the same thing as a man does not lie. With regard to the pleadings, it was the side of the motion to dismiss. That's the point. Gawker can get discovery, and if they think there's an innocent explanation for the CDA, they can bring a summary judgment motion. It shouldn't be done on the motion to dismiss because, as the court said in Swanson v. Citibank, plausibility does not imply that the district court decide which version is to believe. It's not for the district court to stack up one inference by the other inference. It's not what did happen. It's what could have happened. And if the plaintiff gives a plausible story, which I believe that I've pled, that gets you to discovery. Okay, so on these third-party user comments posted online, what's your best comment from your standpoint that's actionable, that's actually defamation? Because when you look at these, let's assume perhaps you should have had the opportunity to get the discovery. I mean, we still have to look at the statements themselves to see if they're actionable. I thought I did cite it in the brief, and they're very strong, if I could find it. You know, things like, for sure, he's a one-time rapist, all right, if I could just find it in the brief. But calling somebody a crazy person is defamatory per se. I cited a case for that where when you do call somebody a crazy person, it's defamatory per se. You know, for example, just because if a man executed rape does not mean he did not commit rape. Never mind serial rapist. He sounds, for real, like a crazy person. So he is actually upset about the serial rapist part. Actually, he's just a one-time rapist. Pardon, I don't want to say it, but, you know, quote, fuck, end quote, this, he's been acquitted, no, he's a rapist, all right, we might as well call him one. Then quote, well, shit, I didn't know kicking back at a bar and asking where I should go to have fun meant that I hereby consent to any and all sexual activity. These comments basically, and that's the other point, they change the headlines at some point. And the reason why they changed the headlines was because I think they realized that the commenters... Thank you, counsel, you've moved on to a different topic now. Thank you. The case will be taken under advisement.